

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-9-2004

# Fielder v. Varner

Precedential or Non-Precedential: Precedential

Docket No. 01-1463

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Fielder v. Varner" (2004). *2004 Decisions*. Paper 376.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/376

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF
APPEALS
FOR THE THIRD CIRCUIT

———————

No. 01-1463

———————

ANTHONY FIELDER,

Appellant

v.

BENJAMIN VARNER;
THE DISTRICT ATTORNEY OF
COUNTY OF PHILADELPHIA;
ATTORNEY GENERAL OF THE
STATE OF PENNSYLVANIA

———————

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF
PENNSYLVANIA

(Dist. Court No. 00-cv-02599)
District Court Judge: Honorable Louis
Charles Bechtle

———————

Argued: January 12, 2004

Before: ALITO, CHERTOFF, and
BECKER, Circuit Judges.

(Opinion Filed: August 9, 2004)

J. Scott O'Keefe (argued)
Suite 1100
1500 Walnut Street
Philadelphia, PA 19102
*Attorney for Appellant*

David C. Glebe (argued)
Thomas W. Dolgenos
Robert M. Falin
Office of the District Attorney
1421 Arch Street
Philadelphia, PA 19102
*Attorney for Appellee*

———————

OPINION OF THE COURT

———————

ALITO, Circuit Judge:

Anthony Fielder, a state prisoner serving a life sentence, appeals the dismissal of his application for a writ of habeas corpus. The District Court approved and adopted the report and recommendation of a Magistrate Judge who concluded that Fielder's petition in its entirety was untimely under 28 U.S.C. § 2244(d)(1). We hold that one of Fielder's claims (his claim of prosecutorial misconduct) was untimely and that his other claim (which sought a new trial based on newly discovered evidence) is not cognizable under the federal habeas statute. We therefore affirm the order of the District Court, albeit in part on different grounds.

1

## I.

In 1990, Fielder was arrested and charged with murdering Jack Fauntleroy outside a bar at 52nd and Market Streets in Philadelphia in September 1989. As summarized by the trial judge, the evidence showed the following. Shortly before Fauntleroy was killed, he became involved in an argument with a man named Stefan. Stefan then went into the bar and emerged with Fielder, who began to argue with Fauntleroy. Several minutes later, Antonio Goldsmith, a friend of Fauntleroy, entered into the argument as well. After the parties came to blows, Fielder reentered the bar and returned to the street with a .38 caliber handgun. As Fauntleroy was fleeing, Fielder shot and fatally wounded him.

Two witnesses gave testimony that tended to show that Fielder was the one who shot Fauntleroy. Latonia Shawyer, who was waiting for a bus and did not previously know either Fauntleroy or Fielder, testified that she saw Fielder shoot Fauntleroy. Goldsmith testified that he ran from the scene when Fielder came out of the bar with a gun. Goldsmith stated that, while running, he heard two shots and that when he turned around, he saw that Fielder was chasing him with the gun in his hand.

The jury found Fielder guilty of first-degree murder and possession of an instrument of crime, and he was sentenced to imprisonment for life on the murder conviction and to a lesser concurrent term for the weapons conviction. Fielder appealed, claiming among other things that the prosecutor had committed acts of misconduct during the trial. However, the Superior Court affirmed, and the state supreme court denied allocatur. Commonwealth v. Fielder, 612 A.2d 1028 (Pa. Super. 1992), allocatur denied, 621 A.2d 577 (Pa. 1993) (table).

Fielder initiated a proceeding under Pennsylvania's Post Conviction Relief Act (PCRA) in which claims of ineffective assistance of counsel and after-discovered evidence were raised. Fielder's after-discovered evidence claim was based on the discovery of an alleged eyewitness to the shooting, Daran Brown, who stated that a man whom he knew by the name of Nike was the one who actually shot Fauntleroy. According to Brown, Fielder and Fauntleroy were walking down Market Street when "Nike came running down the street" behind them and "started shooting in their direction." He continued:

> This is when Zark [Fauntleroy] was shot and fell down in the middle of Market Street. After Zark got shot another guy who I didn't know chased Nike up the street with a gun. At this point I left the scene.

App. 16.

Brown stated that he did not come forward with this information at the time of the shooting because he did want to get involved and because on the street "the general feeling is that it is best if you mind your own business." App. 16. According to Brown, he did not learn that Fielder had

2

been convicted for the shooting until October 1997. Id.

The PCRA court denied the petition, and Fielder appealed and advanced two arguments. First, he contended that the PCRA court should have conducted an evidentiary hearing regarding the after-discovered evidence. Second, he argued that the attorney who represented him in the trial court during the PCRA proceeding was ineffective for failing to contact Brown. The Superior Court rejected both arguments. The Court held that it was not likely that Brown's testimony would have compelled a different result if it had been offered at trial and that therefore the standard under Pennsylvania law for granting a new trial based on after-discovered evidence was not met. The Court then concluded that because the underlying after-discovered evidence claim lacked merit, Fielder's lawyer could not be deemed ineffective "for failing in his efforts to find Daran Brown."

The Superior Court's decision was issued on June 10, 1999, and Fielder failed to file a timely allocatur petition within the Pennsylvania Supreme Court. Instead, after the expiration of the time for filing an allocatur petition, he submitted a request for permission to seek allocatur on a nunc pro tunc basis. The state supreme court dismissed that request in an order dated October 25, 1999.

On May 17, 2000, Fielder filed an application for a writ of habeas corpus in the United States District Court for the Eastern District of Pennsylvania. Fielder argued, first, that the Pennsylvania courts erred when they rejected his claim of newly-discovered evidence and, second, that the prosecutor engaged in misconduct at trial. The Magistrate Judge to whom the petition was referred concluded that the entire petition was untimely. The Magistrate Judge began by noting that Fielder's conviction had become final before April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which imposed the present statute of limitations for federal habeas petitions, 28 U.S.C. § 2244(d)(1). As a consequence, the Magistrate Judge stated, Fielder's time to file his petition began to run one year thereafter, on April 24, 1997. See Burns v. Morton, 134 F.3d 109, 110 (3d Cir. 1998). The Magistrate Judge concluded that the one-year period for filing the petition was tolled under 28 U.S.C. §2244(d)(2) from the date when Fielder filed his PCRA petition (January 14, 1997) until the date when the Superior Court affirmed the dismissal of that petition (June 10, 1999). When the time again began to run after this period, the Magistrate Judge calculated, approximately three and one-half months of the one-year period remained, and therefore Fielder had until "the end of October 1999" to file the federal petition. Because he did not file until May 2000, the Magistrate held, the petition was time-barred.

The District Court approved and adopted the report and recommendation without elaboration and therefore

3

dismissed the application. The District Court also denied a certificate of appealability, but a motions panel of our Court granted a certificate and set out issues to be addressed in the briefs. The order of the motions panel stated:

> The parties shall address whether appellant's § 2254 petition was timely filed. Specifically, the parties shall address (1) whether the cognizability of Fielder's claim of newly discovered evidence affects the application of § 2244(d)(1)(D), and (2) whether § 2244(d)(1)(D) applies to the entire petition if the time period under § 2244(d)(1)(A) for trial claims had not expired at the time of the discovery of the factual predicate of the claim of new evidence.

App. at 10.

## II.

### A.

The timeliness of Fielder's federal habeas petition turns on the meaning of 28 U.S.C.. § 2244(d)(1) and thus presents a question of law subject to plenary review. See Merritt v. Blaine, 326 F.3d 157, 161 (3d. Cir. 2003). Under 28 U.S.C. § 2244(d)(1), the one-year period for filing a federal habeas application runs from the latest of the four dates set out in subsections (A) through (D). These are:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Subsection (A) specifies the date when the one-year period for filing a federal habeas petition begins in most cases (at the end of the direct appeals). Subsection (B) provides a later starting

date when a state has unlawfully prevented the petitioner from filing, and subsections (C) and (D) provide later filing dates in two circumstances in which claims could not have been litigated within one year after the end of direct review, i.e., where the claim is based on a new, retroactive rule of constitutional law subsequently recognized by the Supreme Court and where the factual predicate of the claim did not arise or was not discoverable until after the conclusion of the direct review period.

### B.

Fielder argues that we should apply these provisions to the present case in the following manner. He begins by noting that "*an application* for a writ of habeas corpus" by a person in state custody must be filed within one year after "the latest of" the four dates set out in subsections (A) through (D). 28 U.S.C. § 2244(d)(1) (emphasis added). He then points to subsection (D), which refers to "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Fielder then argues that his entire application was timely because (taking into account the tolling rule set out in 28 U.S.C. § 2244(d)(2))[1] his application

was filed within one year after the date on which the factual predicate for the after-discovered evidence claim could have been discovered, i.e., the date of Daran Brown's affidavit, April 25, 1998. Thus, on Fielder's reading of 28 U.S.C. §2244(d)(1), both his after-discovered evidence claim and his prosecutorial misconduct were timely even though the latter claim, if asserted alone, would have been time-barred.

An argument very similar to Fielder's was adopted by the Eleventh Circuit in Walker v. Crosby, 341 F.3d 1240 (11th Cir. 2003).[2] There, the Court held that "[t]he statute of limitations in § 2244(d)(1) applies to the application as a whole; individual claims within an application cannot be reviewed separately for timeliness." Id. at 1245. In reaching this conclusion, the Court relied primarily on the language of 28 U.S.C. § 2244(d)(1). The Court wrote:

> The statute directs the court to look at whether the "application" is timely, not whether the individual "claims" within the

---

[1]On the date of Brown's affidavit, and, indeed, on the date when Brown claims he first became aware of Fielder's predicament, Fielder's PCRA petition was pending, and under 28 U.S.C. § 2244(d)(2), the pendency of that

proceeding tolled the statute until the PCRA litigation ended on July 10, 1999. Fielder argues that since the federal habeas petition was filed within one year thereafter, in May 2000, it was timely.

[2]See also Shuckra v. Armstrong, No. 3:02cv583(JBA), 2003 U.S. Dist. LEXIS 4408, 2003 WL 1562097 (D. Conn. March 2003).

application are timely. The statute provides a single statute of limitations, with a single filing date, to be applied to the application as a whole.

Id. at 1243.

The Court added that its interpretation of § 2244(d)(1) was "guided by the distinction between an application and claims within an application, and by the presumption that Congress understood the difference when drafting AEDPA." Id. at 1243-44. The Court continued:

> Section 2244(d)(1) states the limitation period shall apply to "an application for a writ of habeas corpus." Contrast the language in § 2244(d) creating a statute of limitations with the language in § 2244(b) requiring dismissal of certain claims presented in a second or successive application. The former speaks only to the timeliness of the "application," while the latter allows for the dismissal of "claims" within a second or successive application if they were or could have been presented in a prior application.

Id.

### III.

We do not agree with the interpretation advanced by Fielder and the Walker Court. Although Fielder and the Walker Court claim that this interpretation is dictated by the language of 28 U.S.C. § 2244(d)(1), their interpretation (which, for convenience, we will simply call the Walker interpretation) actually disregards the language used in the portion of § 2244(d)(1) that is most critical for present purposes, i.e., subsection (D). Subsection (D), as noted, refers to "the date on which the factual predicate of *the claim or claims presented* could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D) (emphasis added). Applying this language in a case in which multiple claims are presented poses a problem, as Fielder's case illustrates.

Fielder's application, as noted, presented two claims, a prosecutorial misconduct claim and an after-discovered evidence claim. The factual predicate of the prosecutorial misconduct claim was presumably known to Fielder at the time of trial, but the factual predicate of the after-discovered evidence claim was not reasonably discoverable until years later. So which of these two dates should control?

If § 2244(d)(1) is applied, as we believe it must be, on a claim-by-claim basis, there is no problem, but if, as the Walker interpretation prescribes, the claim-by-claim approach is rejected, there is nothing in § 2244(d)(1) that provides a ground for picking one date over the other. The Walker interpretation implicitly reads subsection (D) as if it refers to "**the latest date** on which the factual predicate of **any**

6

**claim presented** could have been discovered through the exercise of due diligence." But that is not what subsection (D) says.

Although neither Fielder nor the <u>Walker</u> Court explains the ground for their implicit conclusion that subsection (D) requires a court to pick the latest date when the factual predicate of a claim was reasonably discoverable, it is possible that their analysis is based on the statement in § 2244(d)(1) that the application runs from "the latest of" the four dates specified in subsections (A) through (D). However, this reference to "the latest" date does not appear in subsection (D) and it does not pertain to the issue at hand. The reference to "the latest" date in § 2244(d)(1) tells a court how to choose from among the four dates specified in subsections (A) through (D) *once those dates are identified.* This language does not tell a court how to identify the date specified in subsection (D) in a case in which the application contains multiple claims. Accordingly, there is nothing in § 2244(d) that suggests that a court should follow the <u>Walker</u> interpretation and select the *latest* date on which the factual predicate of any claim presented in a multi-claim application could have reasonably been discovered. It would be just as consistent with the statutory language to pick the *earliest* date.

For these reasons, we believe that the <u>Walker</u> interpretation fails on its own terms. It purports to be based on the language of § 2244(d)(1) but actually neglects to pay close attention to the statutory language.

IV.

If we look beyond the words of the statute, as we believe we must in this case, we see two strong reasons for concluding that the statute of limitations set out in § 2244(d)(1) should be applied on a claim-by-claim basis.

A.

First, this is the way that statutes of limitations are generally applied, and there is no reason to suppose that Congress intended to make a radical departure from this approach in § 2244(d)(1). In both civil and criminal cases, statutes of limitations are applied on a claim-by-claim or count-by-count basis. When a statute of limitations defense is raised in a case with a multi-claim civil complaint or a multi-count criminal indictment, the court determines the date on which the statute began to run for each of the claims or counts at issue, not just the latest date on which the statute began to run for any of the claims or counts. <u>See</u>, <u>e.g.</u>, <u>King v. Otasco, Inc.</u>, 861 F.2d 438, 441 (5th Cir. 1988) ("When a suit alleges several distinct causes of action, even if they arise from a single event, the applicable limitations period must be determined by analyzing each cause of action separately."); <u>Home Indem. Co. v. Ball-Co Contractors, Inc.</u>, 819 F.2d 1053, 1054 (11th Cir. 1987) (holding that the District Court had erred in dismissing the appellant's separate but related claim on statute of limitations grounds because it was in fact governed by a different statute of limitations); <u>Barnebey v. E.F. Hutton &</u>

7

Co., 715 F. Supp. 1512, 1525 (M.D. Fla. 1989) (establishing different statute of limitations for the different civil claims against the defendant); Weeks v. Remington Arms Co., 733 F.2d 1485, 1486 (11th Cir. 1984) (affirming the District Court's dismissal of the appellant's strict liability claims but reversing the District Court's directed verdict on the appellant's negligence claims); Contract Buyers League v. F & F Inv., 300 F. Supp. 210, 221 (N.D. Ill. 1969) (applying antitrust statute of limitations to the antitrust counts but determining what limitation applied to the other Civil Rights counts); United States v. Spector, 1994 U.S. Dist. LEXIS 12500, 1994 WL 470554 (D.N.H. Aug. 31, 1994) (dismissing several counts of a multiple-count indictment as time-barred but sustaining other counts of the indictment); People v. Kelly, 299 Ill. App. 3d 222, 225 (Ill. App. Ct. 1998) (describing the seven-count information under which the defendant was charged and the fact that the defendant's motion to dismiss three counts because they charged crimes whose statutes of limitations had run was granted); State v. Stansberry, 2001 Ohio App. LEXIS 3014, 2001 WL 755898 (Ohio Ct. App. July 5, 2001) (denying defendant's argument that his felony murder conviction should have been barred by the statute of limitations because the underlying felony, aggravated robbery, was time-barred).

The Walker interpretation, recounted above, holds that the wording of § 2244(d)(1) forecloses a claim-by-claim approach because it refers to the period within which "an application," rather than a "claim," must be filed. But there is nothing unusual about the wording of § 2244(d)(1). It is common for statute of limitations provisions to be framed using the model of a single-claim case. For example, the general statute of limitations for federal claims, 28 U.S.C. § 1658, prescribes the date by which "a civil action" must be commenced. State statutes often use similar wording. The New Jersey statutes speak of the time within "an action of law" must be commenced. N.J.S.A. § 2A:14-1 et seq. The Pennsylvania statutes generally refer to the time within which an "action" or "proceeding" must be begun. See 42 Pa. Cons. Stat. Ann. §§ 5501, 5522 et seq.

Although these provisions are framed on the model of the one-claim complaint, it is understood that they must be applied separately to each claim when more than one is asserted. To take 28 U.S.C. § 1658 as an example, one could say of the wording of that provision precisely what the Walker Court said of the wording of 28 U.S.C. § 2244(d)(1):

> The statute directs the court to look at whether the ["civil action"] is timely, not whether the individual "claims" within the [complaint] are timely. The statute provides a single statute of limitations, with a single filing date, to be applied to the ["civil

8

action"] as a whole.

Walker, 341 F.3d at 1243 (bracketed material added). Yet no one, we assume, would argue that, in a civil case with multiple federal claims, the statute of limitations must begin on the same date for every claim. Rather, each claim must be analyzed separately. We believe that § 2244(d)(1) was not intended to be applied in a similar fashion.

## B.

Second, we believe that a claim-by-claim approach is necessary in order to avoid results that we are confident Congress did not want to produce. Specifically, the Walker interpretation has the strange effect of permitting a late-accruing federal habeas claim to open the door for the assertion of other claims that had become time-barred years earlier.

An example illustrates this point. Suppose that on direct appeal a criminal defendant in a state case (Doe) raises only one federal constitutional claim, say, that his Fifth Amendment right to be free from compelled self-incrimination was violated when the prosecutor made statements in summation that Doe interprets as commenting on his failure to take the stand. Doe is unsuccessful on direct appeal and chooses not to pursue state collateral relief. Doe then has one year from the conclusion of direct review to file a federal habeas petition asserting this claim, but he elects not to file a federal habeas petition, and five years pass. At the end of that five-year period, the Supreme Court of the United States hands down a decision that recognizes a new,

retroactively applicable constitutional right regarding the conduct of police interrogations, and it appears that this right might have been violated in Doe's case. Doe unsuccessfully pursues collateral review in state court, but he does not file a federal habeas petition, and another five years pass. At this point, ten years after the conclusion of the direct review process, both the self-incrimination and unlawful interrogation claims are time-barred by 28 U.S.C. § 2244(d)(1). Suppose, however, that a short time later Doe discovers the factual predicate for an entirely different federal constitutional issue, namely, that the prosecution may have violated Brady v. Maryland, 373 U.S. 83 (1963), because it had in its possession at the time of trial, but did not disclose, certain arguably exculpatory evidence. Doe promptly attempts to exhaust state remedies with respect to this new claim, and as soon as those efforts prove unfruitful, he files a federal habeas petition asserting both the Brady claim and the previously barred self-incrimination and unlawful interrogation claims. Under the Walker interpretation of 28 U.S.C. § 2244(d)(1), the one-year statute begins to run on the date of the discovery of the factual predicate of the Brady claim, and the formerly barred claims are miraculously revived.

We cannot think of any reason why Congress would have wanted to produce such a result. It makes sense to give Doe time to petition for habeas review of the new Brady claim, but why should he be allowed to raise the self-incrimination claim, which had been time-barred for the

9

past nine years? Why should he be permitted to raise the unlawful interrogation claim, which had been time-barred for the past four years? Why should the late discovery of the <u>Brady</u> claim revive these unrelated, previously barred claims? Neither Fielder nor the <u>Walker</u> Court has explained why Congress might have wanted to produce such results, and we cannot think of any plausible explanation.[3]

---

[3]A treatise argues that the <u>Walker</u> interpretation of 28 U.S.C. § 2244(d)(1) avoids unwarranted "piecemeal" habeas litigation, 1 RANDY HERTZ & JAMES S. LIEBMAN, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE § 5.2b at 266-67 & n.70 (4th ed. 2001), but we find this argument unconvincing because the circumstances in which the <u>Walker</u> interpretation would lead to fewer successive petitions are quite limited.

The category of cases that must be considered are those in which a state prisoner exhausts some federal claims on direct review ("the direct review claims") and discovers another federal claim ("the late accruing claim") that cannot be raised on direct review and that falls within § 2244(d)(1)(C) or (D). Within this category of cases, there are three relevant subcategories.

In the first, the prisoner does not learn that he has any basis for asserting the late accruing claim until more than one year after the conclusion of direct review. In this situation, no matter which interpretation of 28 U.S.C. § 2244(d)(1) is in effect, the prisoner certainly should not wait before filing a petition raising the direct review claims. Without knowing that he should subsequently have a ground for the late accruing claim, he will file a petition raising the direct review claims before the end of the one-year period and should later file a second petition under 28 U.S.C. § 2244(b)(2) raising the late accruing claim.

In the second situation, the prisoner learns that he has a basis for the late accruing claim during the one-year period after the end of direct review, and he also begins a state collateral proceeding raising the late accruing claim during this period. In this situation, the prisoner's options will be the same no matter whether our interpretation or the <u>Walker</u> interpretation of § 2244(d)(1) is in effect. In either event, the prisoner will have two choices. He will be able to file an initial federal petition raising the direct review claims and then seek to file a second petition raising the late accruing claim under 28 U.S.C. § 2244(b)(2). He will also have the option of waiting until the end of the state collateral proceeding (which tolls the time for filing a federal petition raising the direct review claims) and then filing a single petition raising both the direct review claims and the late accruing claim.

In the third situation, the prisoner learns that he has a basis for the late accruing claim during the one-year period after the end of direct review but he does not begin a state collateral proceeding

## C.

In support of his interpretation of 28 U.S.C. § 2244(d)(1), Fielder understandably relies on language in Sweger v. Chesney, 294 F.3d 506 (3d Cir. 2002), but we are not persuaded by this argument. We note, first, that Sweger did not concern the issue presented here. Sweger did not decide when the habeas statute of limitations begins to run under 28 U.S.C. § 2244(d)(**1**). Instead, Sweger concerned the interpretation of 28 U.S.C. § 2244(d)(**2**), which provides for the tolling of the statute of limitations while a state post-conviction proceeding is pending. The question in Sweger was whether under § 2244(d)(2) a state proceeding tolls the statute with respect to just the claims at issue in the state proceeding or with respect to all the claims included in a subsequently filed federal petition. We held that the statute is tolled for all of the claims in the federal petition.

during this period. In this situation, the choice between the Walker interpretation and ours would make a difference, but we believe that very few cases will fall into this category. As a result, we do not think that our interpretation will lead to any significant increase in the number of successive federal habeas applications. In addition, the mild impact on judicial economy of a few successive federal habeas applications would be far less than the impact on state courts of a rule that allows all claims of error to be resuscitated through the happenstance of reviving a single claim under Subsection (c) or (d).

That interpretation of § 2244(d)(2) obviously does not require us in this case to adopt the Walker interpretation of 28 U.S.C. § 2244(d)(1).

Nor is there any logical inconsistency between the holding in Sweger and our holding here. The heart of our reasoning in Sweger was as follows:

> Section 2244(d)(2) states, "the time during which a properly filed application for State post-conviction or other collateral review *with respect to the pertinent judgment or claim* is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). Reading this language to require that the state post-conviction proceeding raise the *claims* contained in the habeas petition ignores the use of the word "judgment" in the statute. See Carter [v. Litscher, 275 F.3d 663, 665 (7th Cir. 2001)] ("Austin [v. Mitchell, 200 F.3d 391 (6th Cir. 1999)] reads the word 'judgment' out of § 2244(d)(2) and tolls the time only while a particular 'claim' . . . is before the state court. That is just not what the statute says. Any properly filed collateral

challenge *to the judgment* tolls the time to seek federal collateral review.") (emphasis in original).

294 F.3d at 516-17 (bracketed material added). We thus relied on a straightforward application of the particular language of 28 U.S.C. § 2244(d)(**2**), and there is no tension between this analysis and our interpretation in this case of 28 U.S.C. § 2244(d)(**1**).

As Fielder stresses, however, our opinion in <u>Sweger</u> does contain *statements* concerning 28 U.S.C. § 2244(d)(1) that support his position here. In particular, <u>Sweger</u> stated that the 28 U.S.C. § 2244(d)(1) must be applied to a habeas petition as a whole and not on a claim-by-claim basis. 294 F.3d at 514-15, 517. The <u>Sweger</u> Court used this interpretation of 28 U.S.C. § 2244(d)(1) as non-claim-specific to bolster its interpretation of 28 U.S.C. § 2244(d)(2) as likewise non-claim-specific. Because these statements were dicta, however, they do not bind us, and for the reasons explained above, we conclude that 28 U.S.C. § 2244(d)(1), like other statute of limitations provisions, must be applied on a claim-by-claim basis.

V.

Applying our interpretation of § 2244(d)(1) to the present case, it is clear that Fielder's prosecutorial misconduct claim was not filed on time. Subsection (D) does not save this claim because the factual basis for the prosecutorial misconduct claim was known many years earlier. Thus, subsection (A) governs. Even with tolling, there is no dispute that

Fielder filed his federal petition long after the date specified under subsection (A). Accordingly, Fielder's claim of prosecutorial conduct is time-barred, and it was properly dismissed by the District Court.

By contrast, Fielder's after-discovered evidence claim is timely under § 2244(d)(1)(D). Nevertheless, we can affirm the decision of the District Court on the alternative ground that this claim is not cognizable under the federal habeas statute because it rests on state, rather than federal, law. It has long been recognized that "[c]laims of actual innocence based on newly discovered evidence" are never grounds for "federal habeas relief absent an independent constitutional violation." <u>Herrera v. Collins</u>, 506 U.S. 390, 400 (1993). Therefore, Fielder's after-discovered evidence claim was properly dismissed by the District Court.

IV.

For the reasons set out above, we affirm the District Court's order.