FILED
United States Court of Appeals
Tenth Circuit

November 6, 2012

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

# UNITED STATES COURT OF APPEALS

## TENH CIRCUIT

BRIAN VICTOR PRENDERGAST,

Petitioner-Appellant,

v.

TOM CLEMENTS, Executive Director
of the Colorado Department of
Corrections, and JOHN SUTHERS,
Attorney General of the State of
Colorado,

Respondents-Appellees.

No. 12-1166

(D. of Colo)

(D.C. No. 11-cv-03263-LTB)

## ORDER DENYING CERTIFICATE OF APPEALABILITY

Before **KELLY**, **TYMKOVICH**, and **GORSUCH**, Circuit Judges.

**TYMKOVICH**, Circuit Judge.

Brian Victor Prendergast, a Colorado state prisoner proceeding *pro se*,
requests a certificate of appealability to appeal the district court's denial of his
application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He also
asks this court for leave to proceed *in forma pauperis*. For the reasons set forth

below, we deny him *in forma pauperis* status, deny the application for a COA, and dismiss this matter.[1]

# I. Background

Prendergast was convicted by jury trial in Arapahoe County District Court on twelve counts of securities fraud and one count of theft over $15,000. He appealed his conviction and was sentenced to concurrent terms of ten years of probation on each count. On October 9, 2003, the Colorado Court of Appeals affirmed his conviction on direct appeal. *See People v. Prendergast*, 87 P.3d 175 (Colo. Ct. App. 2003). On April 12, 2004, the Colorado Supreme Court denied certiorari review.

After his conviction, Prendergast violated the terms of his probation on a number of occasions and was accordingly resentenced. Then, on August 28, 2009, after having revoked his probation, a state trial court resentenced him to concurrent terms of six years in the Colorado Department of Corrections. On March 24, 2011, the Colorado Court of Appeals affirmed this resentencing. Prendergast did not seek further review of the resentencing ruling at the Colorado

---

[1] As is the case here, "[i]f an application [for habeas relief] was denied by the district court on procedural grounds, the applicant must show 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Woodward v. Cline*, 693 F.3d 1289, 1292 (10th Cir. 2012) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). As explained below, the petitioner has not shown that jurists of reason would find the district court's ruling unreasonable.

Supreme Court. Instead, on December 13, 2011, Prendergast filed in federal district court the application for federal habeas relief that we review here.

Prendergast's application presented five claims. Two attacked the constitutionality of his August 2009 resentencing. The other three attacked the basis of his original conviction from 2003. The district court dismissed the two claims related to the 2009 resentencing for failure to exhaust state-court remedies. Further, the court dismissed as untimely the three claims related to the original conviction.

We now review these two bases for dismissal and find no reason to disturb these rulings from the district court.

## II. Analysis

### A. Exhaustion of State Court Remedies

At the district court, Prendergast presented two claims related to his 2009 resentencing and based on alleged violations of due process and the Double Jeopardy Clause. The district court, in dismissing the due process claim, held that when Prendergast raised it at the Colorado Court of Appeals, he did not present the claim as having a federal constitutional dimension.

As to the double-jeopardy claim, the district court concluded Prendergast had not exhausted state court remedies on the claim because it was not raised on

direct appeal.  In this appeal, Prendergast disputes the district court's analysis on both claims.[2]

For a federal court to consider a federal constitutional claim in an application for habeas, the claim must be "fairly presented to the state courts"  in order to give state courts the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotations omitted).  Indeed, "[i]f state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution."  *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) (per curiam).  A petitioner need not invoke "talismanic language" or cite "book and verse on the federal constitution."  *Nichols v. Sullivan*, 867 F.2d 1250, 1252 (10th Cir. 1989) (internal quotations omitted); *see also Connor*, 404 U.S. at 278.  Rather, the crucial inquiry is whether the "substance" of the petitioner's claim has been presented to the state courts in a manner sufficient to put the courts on

---

[2]  The State of Colorado did not argue that Prendergast failed to exhaust these claims by not appealing his adverse resentencing ruling to the Colorado Supreme Court.  *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999) (holding that a defendant's failure to appeal to a state's highest court, even if the review at that court is discretionary, constitutes a failure to exhaust state court remedies).  The State (and the district court) do cite *Boerckel*, but not for this specific proposition.  It appears we could *sua sponte* apply the *Boerckel* nonexhaustion argument to these claims.  *See Granberry v. Greer*, 481 U.S. 129, 131-35 (1987); *see also Wood v. Milyard*, 132 S. Ct. 1826, 1832-33 (2012).  We see no need to do so here and therefore address only the nonexhaustion argument advanced by the State in the district court.

notice of the federal constitutional claim. *Connor*, 404 U.S. at 278; *Nichols*, 867 F.2d at 1252.

Pendergrast did not satisfy this standard with regard to either of his attacks on resentencing. At the Colorado Court of Appeals, Prendergast only argued that the trial court abused its discretion in considering certain evidence at his resentencing hearing. We see nothing in Prendergast's briefing there to alert the state court about a federal constitutional claim.[3] While Prendergast's reply brief suggests that the state trial court's abuse of discretion might have violated due process, the constitutional argument could not initially be raised in a reply brief and would have been waived. Thus, the only argument properly before the state court was not constitutional in nature. Further, there is absolutely no mention of the double jeopardy claim that Prendregast now raises. The district court therefore correctly concluded Prendergast did not exhaust state-court remedies as to either claim.

Prendergast suggests two reasons why he should be exempted from this exhaustion requirement, neither of which we find persuasive. First, Prendergast suggests he no longer has "an adequate and effective" state-court remedy as the

---

[3] Prendergast points to the opening brief's reliance on state statutes as evidence that he was raising a *federal* constitution claim. He suggests that state statues are the equivalent of the state constitution and that any violation of state constitutional rights invokes a violation of federal constitutional rights. Both of these assertions misinterpret basic precepts of constitutional law: rights based in statute are not the same as constitutional rights and it is possible to commit a state constitutional violation without violating the federal constitution.

time to raise these claims on direct review has expired. Because he is barred from bringing these claims on direct review, he argues he should be "excused" from the exhaustion requirements. Yet well-established precedent on habeas forecloses our excusing Prendergast's failure to raise this claim in state court, regardless of whether he is now procedurally barred in that court from raising the claim. *See, e.g.*, *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (noting that "letting the time run" on state remedies as a means of fulfilling the exhaustion requirement would "undercut the values that [the requirement] serves") (quoting *id.* at 853 (Stevens, J. dissenting)).

Second, Prendergast argues for an exemption from the exhaustion rule because his failure to exhaust derives from the ineffective assistance of his legal counsel. On this claim, we agree with the district court that *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000), requires Prendergast to have first raised this claim in a state-court post-conviction proceeding. Because Prendergast has not taken this step, we cannot find cause for the procedural default of his two unexhausted claims.

We therefore decline to disturb the district court's ruling on these two claims.

### B. Untimeliness

At the district court, Prendergast presented three claims challenging the constitutionality of his 2003 conviction. Applying the Antiterrorism and

Effective Death Penalty Act of 1996 (AEDPA), the district court concluded all three of these claims were time barred. Prendergast disputes the district court's application of AEDPA's statute of limitations provision to these claims.

AEDPA sets a one-year limitations period for filing a § 2254 application. 28 U.S.C. § 2244(d)(1). As provided by the statute, the limitations period begins to run on the latest of four possible dates. Relevant here, a judgment becomes final when the defendant has exhausted all direct appeals in state court and the time to petition for a writ of certiorari from the United States Supreme Court has expired (i.e., 90 days after the decision by the state's highest court). *See* 28 U.S.C. § 2244(d)(1)(A); *Fleming v. Evans*, 481 F.3d 1249, 1257–58 (10th Cir. 2007).

The district court concluded Prendergast's conviction became final on July 11, 2004, ninety days after the Colorado Supreme Court denied certiorari review of the ruling from the Colorado Court of Appeals. Because Prendergast did not raise claims attacking the original conviction until over seven years later, these claims would clearly exceed the one-year limitations period for filing an application under 28 U.S.C. § 2244. Thus, absent some form of tolling or equitable relief, these three claims would be time-barred under AEDPA.

Prendergast resists this conclusion by suggesting that because he timely raised claims on his 2009 resentencing, the attacks on his original conviction are now somehow resurrected. Some non-binding authority supports this argument.

-7-

Prendergast points us to *Ferreira v. Sec'y, Dep't of Corr.*, 494 F.3d 1286 (11th Cir. 2007). The Eleventh Circuit's reasoning in *Ferreira* relied in large part on an earlier opinion, *Walker v. Crosby*, 341 F.3d 1240 (11th Cir. 2003), which more directly supports Prendergast's position.

In *Walker*, a state prisoner presented an application for habeas raising five claims. *Id.* at 1242. Four of these claims attacked the basis of his conviction and, on their own, would have been time-barred under AEDPA. The fifth claim was timely and challenged the constitutionality of the prisoner's resentencing. This resentencing claim was also presented on direct review in state courts. *Id.* at 1242 & n. 3. Thus, the *Walker* court was presented with four untimely claims and one timely claim. *Id.*

The *Walker* court concluded that the one timely claim made the four otherwise untimely claims once again timely. The court reasoned that because § 2244(d)(1) mandates that the limitations period "shall apply to an *application* for a writ of habeas corpus," a court must "look at whether the 'application' is timely, not whether the individual 'claims' within the application are timely." *Id.* at 1243. Invoking § 2244(d)(1)(D), the court reasoned that because "the date on which the factual predicate of [the resentencing claim] could have been discovered through the exercise of due diligence" was within the one-year limitations period, all five claims were timely. *Id.*

Prendergast invites us to apply this same rule to his application by measuring the AEDPA statute of limitations for all five of his claims from the date his resentencing became final. Because his resentencing claim was filed within the one-year limitations period under AEDPA, adopting the *Walker* rule would make the attacks on his conviction timely. For several reasons, however, we decline to adopt the *Walker* rule in Prendergast's case.

First, in *Walker* no dispute existed about whether the defendant had properly exhausted state court remedies on the timely-filed resentencing claim. As we noted above, however, Prendergast has failed to properly exhaust his resentencing claims in state court. To extend the *Walker* rule to allow timely-filed but unexhausted state remedies to provide a vehicle for a federal court to reach the merits on untimely claims would undercut AEDPA's goal of requiring state courts to first address such claims.

Second, even if Prendergast had properly exhausted his state court remedies on the resentencing claims, we would decline to endorse the Eleventh Circuit's position in *Walker*. Rather, we are persuaded that then-Judge Alito's opinion in *Fielder v. Varner*, 379 F.3d 113 (3d Cir. 2004), provides a strong alternative to the *Walker* rule.

In *Fielder*, the Third Circuit considered two claims in a habeas petition: an untimely claim involving prosecutorial misconduct and a timely one involving newly discovered evidence not known to the petitioner at the time of trial. *Id.* at

-9-

118.  In a maneuver similar to the one endorsed in *Walker*, the petitioner argued that because the claim related to the newly discovered evidence was timely, the prosecutorial misconduct claim was also timely, as it was part of the same application.  *Id*.

*Fielder* rejected this argument.  Rather, the Third Circuit returned to the text of § 2244(d)(1)(D) and reasoned that the Eleventh Circuit's interpretation requires implicitly reading this subsection "as if it refers to *the latest date on which the factual predicate of any claim presented* could have been discovered through the exercise of due diligence."  *Id*. (emphasis in original).  The court noted that this implicit reading of the statute is not what the statute actually states.

The court continued:

> this reference to "the latest" date does not appear in subsection (D) and it does not pertain to the issue at hand. The reference to "the latest" date in § 2244(d)(1) tells a court how to choose from among the four dates specified in subsections (A) through (D) *once those dates are identified*.  This language does not tell a court how to identify the date specified in subsection (D) in a case in which the application contains multiple claims.  Accordingly, there is nothing in § 2244(d) that suggests that a court should follow the *Walker* interpretation and select the latest date on which the factual predicate of any claim presented in a multi-claim application could have reasonably been discovered.  It would be just as consistent with the statutory language to pick the earliest date.

*Id*.  The court went on to conclude § 2244(d)(1) should be applied on a claim-by-claim basis.  First, a claim-by-claim approach was consistent with how

statutes of limitations are generally applied in civil and criminal cases, and there was no indication that Congress intended to depart from this norm in AEDPA. *Id*. at 118–19.

And second, the court determined that "a claim-by-claim approach is necessary in order to avoid results that we are confident Congress did not want to produce." *Id.* at 119-20. Indeed, if the *Walker* court was correct on Congress's intentions in AEDPA, then a "late-accruing federal habeas claim . . . [would] open the door for the assertion of other claims that had become time-barred years earlier," well after the time when the evidence to consider such other claims might have been discarded. *Id*. at 120.

We are persuaded by the Third Circuit's reasoning in *Fielder*. Indeed, we might add that the *Walker* rule creates a perverse incentive for potential habeas petitioners with otherwise time-barred constitutional claims to violate the terms of their sentence. Under *Walker*, a petitioner who had failed to raise now time-barred claims would have reason to commit some infraction, incur resentencing, allege a constitutional violation in the resentencing, and resuscitate the time-barred claims.

A number of other courts have endorsed *Fielder*'s rejection of *Walker*. *See, e.g.*, *Mardesich v. Cate*, 668 F.3d 1164, 1170–71 (9th Cir. 2012); *Maldonado v. Thaler*, 662 F. Supp. 2d 684, 700–01 (S.D. Tex. 2009); *Khan v. United States*, 414 F. Supp. 2d 210, 216 (E.D.N.Y. 2006); *see also Bachman v. Bagley*, 487 F.3d

979, 983–85 (6th Cir. 2007) (distinguishing *Walker* yet determining that applying the *Walker* rule would be foreclosed by Sixth Circuit precedent that mirrored *Fielder*'s reasoning).  Further, the Eleventh Circuit itself appears poised to reconsider—if not disavow—*Walker*, as the court reviews that holding en banc. *See Zack v. Tucker*, 666 F.3d 1265 (11th Cir. 2012), *reh'g en banc granted*, 678 F.3d 1203 (11th Cir. 2012).  Therefore, again, we decline to disturb the district court's correct conclusion that these three claims are untimely.

## III.  Conclusion

Based on the foregoing analysis, we DENY petitioner's application for a certificate of appealability, DISMISS this matter, and DENY his motion to proceed *in forma pauperis*.