In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 04-3666

NICHOLAS ESCAMILLA,

*Petitioner-Appellant,*

*v.*

EUGENE JUNGWIRTH, Warden,
East Moline Correctional Center,

*Respondent-Appellee.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 00 C 3270—**Marvin E. Aspen**, *Judge.*

---

ARGUED SEPTEMBER 20, 2005—DECIDED OCTOBER 14, 2005

---

Before EASTERBROOK, MANION, and SYKES, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Nicholas Escamilla was convicted of murder for his role in the death of Hector Olague, who belonged to a rival gang. The prosecution's theory is that Escamilla drove a car that two of his fellow gang members used to hunt down the victim and escape after the shooting. Several eyewitnesses described Escamilla's role. Testifying at his trial consistently with a statement he had made to the police, Escamilla admitted driving the car from which other gang members debarked to commit the murder, but he contended that he thought the expedition's purpose was to pick up one passenger's

girlfriend rather than to kill anyone. The jury concluded that Escamilla had known of the trip's goal. He is serving a term of 29 years' imprisonment.

In this collateral attack under 28 U.S.C. §2254, Escamilla contends that his attorney furnished ineffective assistance by withdrawing a motion to suppress the statement and by not finding potential alibi witnesses. Yet if Escamilla told the truth at trial, then alibi testimony would have been perjured, and there would have been little point in excluding a statement that was all but identical to the defendant's trial testimony. Escamilla's current position, however, is that *he* was the perjurer at trial—that he was nowhere near the scene of the murder, and that his pretrial statement is the product of coercive interrogation.

It is difficult to see how a collateral attack based on the proposition that the petitioner's own trial testimony was a pack of lies has any prospect of success. Litigants must live with the stories that they tell under oath. See, e.g., *United States v. Stewart*, 198 F.3d 984 (7th Cir. 1999); *Dye v. Wargo*, 253 F.3d 296 (7th Cir. 2001); cf. *Cleveland v. Policy Management Systems, Inc.*, 526 U.S. 795, 806 (1999); *Opsteen v. Keller Structures, Inc.*, 408 F.3d 390 (7th Cir. 2005).

Escamilla maintains that, once his lawyer withdrew the motion to exclude the statement, he had "no choice" but to testify consistently with it. Not at all. He could have asked the court for a new lawyer, remained silent at trial, or testified to what he now insists is the truth and asked the jury to disregard what he had said before. The legal system offers many ways to deal with problems; perjury is not among them. See, e.g., *Brogan v. United States*, 522 U.S. 398 (1998). How could any court credit statements made by a litigant such as Escamilla who trumpets a willingness (indeed, asserts an entitlement) to lie under oath whenever deceit serves his interests?

The district court did not deny the petition on this ground, however. Instead it held the petition untimely. *Escamilla v. Walls*, 2004 U.S. Dist. LEXIS 14626 (N.D. Ill. July 29, 2004). Escamilla's conviction became final in 1997, and he did not file a federal petition until 2000. None of the intervening time is excludable under 28 U.S.C. §2244(d)(2), because Escamilla did not file a state collateral attack until after getting the federal proceeding under way. The district court stayed the federal case to allow exhaustion. See *Rhines v. Weber*, 125 S. Ct. 1528 (2005). The state court's willingness to entertain a belated collateral attack on the merits does not affect the timeliness of the federal proceeding, because no state collateral review was "pending" during 1998 and 1999. See *Fernandez v. Sternes*, 227 F.3d 977 (7th Cir. 2000); see also *Daniels v. Uchtman*, No. 04-2574 (7th Cir. Aug. 29, 2005) (decision by state court on the merits of a belated collateral attack does not renew the time for a federal collateral proceeding).

Escamilla contends that his time restarted under §2244(d)(1)(D), which grants a fresh year from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." According to Escamilla, he did not discover until some time during 1999 (if not later) that other persons who had been interrogated by Detectives Halloran, O'Brien, Ryan, and Boudreau had accused these detectives of coercing them to confess. This additional information bolsters the contention that his confession should have been suppressed, Escamilla insists, and justifies a new year under §2244(d)(1)(D). This argument founders on both factual and legal grounds.

The factual problem is that people interrogated by these detectives had been accusing them of misconduct for many years. The *Chicago Tribune* ran a story on the subject during 1993, and the Chicago Police Department's Office of Professional Standards published a report in May 1997;

both of these occurred before Escamilla's conviction became final. The district judge sensibly concluded that "Escamilla could have obtained this evidence through the exercise of due diligence much earlier than 1999 or 2000." 2004 U.S. Dist. LEXIS 14626 at *10. See also *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2001) (time runs from when evidence could have been discovered through diligent inquiry, not when it was actually discovered or its significance realized).

The legal problem is that Escamilla knew "the factual predicate of [his] claim" before his trial. The "claim" is that the statement had been coerced; the "factual predicate" for that claim is what happened to Escamilla himself (as opposed to other suspects). Escamilla knew before his trial how the detectives had treated him. He filed a motion to suppress. A claim made by pretrial motion, supported by the recollections of witnesses, is not one in which the "factual predicate" did not come to light until long after trial. Section 2244(d)(1)(D) does not restart the time when corroborating evidence becomes available; if it did, then the statute of limitations would fail in its purpose to bring finality to criminal judgments, for any prisoner could reopen the judgment by locating any additional fact. As a matter of law, new evidence supporting a claim actually made at or before trial cannot form the basis of a new period under §2244(d)(1)(D).

Escamilla cannot get traction by recharacterizing this as a challenge to counsel's conduct, for he knew before trial that counsel had withdrawn the motion. A complaint about that decision could have been presented to the state judiciary on appeal or by a prompt collateral attack. No new "factual predicate" supporting a "claim" that counsel rendered ineffective assistance is possible even in theory, because the adequacy of counsel's performance must be assessed in light of what was actually known (or reasonably knowable) at the time counsel acted, rather than what comes to light years later. See *Strickland v. Washing-*

*ton*, 466 U.S. 668, 690 (1984); *Jarrett v. United States*, 822 F.2d 1438, 1442 (7th Cir. 1987).

This drives Escamilla to contend that the statutory criteria may be overridden by equitable considerations. He observes that "actual innocence" can excuse a procedural default in state court and may permit a federal court to adjudicate a second or successive contention on the merits, see §2244(b)(2)(B); *Herrera v. Collins*, 506 U.S. 390 (1993); he wants us to extend this so that innocence also permits belated filing, despite the lack of any support in §2244(d) for such an extension. Again this contention has both factual and legal shortcomings.

The factual shortcoming is that Escamilla cannot demonstrate, by clear and convincing evidence, that no reasonable jury would have convicted him. Escamilla's own words on the stand at trial show that he drove his fellow gang members to and from the killing. Courts do not allow prisoners to start with clean slates after their convictions and argue "actual innocence" as if the trial had not occurred.

The legal shortcoming is that "actual innocence" is unrelated to the statutory timeliness rules. See *Gildon v. Bowen*, 384 F.3d 883 (7th Cir. 2004). "Actual innocence" permits a second petition under §2244(b)(2)(B)—it clears away a claim that the prisoner defaulted in state court or by omission from the first federal petition—but does not extend the time to seek collateral relief. Section 2244(d) sets the timing rules for all petitions. The Supreme Court said in *Dodd v. United States*, 125 S. Ct. 2478, 2482-83 (2005), that a second or successive petition must meet these requirements—and this is so, the Court added, even if the time runs out before a given avenue of attack on the conviction becomes legally and factually tenable.

A second petition thus is possible if the factual predicate could not have been discovered earlier, *and* the prisoner shows actual innocence by clear and convincing evidence.

The first showing resets the clock under §2244(d)(1)(D), and the second clears the remaining procedural hurdle under §2244(b)(2)(B). Actual innocence without a newly discovered claim does nothing at all. Although the statute leaves some (limited) room for equitable tolling, see *Pace v. DiGuglielmo*, 125 S. Ct. 1807, 1814-15 (2005), courts cannot alter the rules laid down in the text. Section 2244(d) has a rule for when new factual discoveries provide a fresh period for litigation; unless that standard is met, a contention that the new discoveries add up to actual innocence is unavailing. Prisoners claiming to be innocent, like those contending that other events spoil the conviction, must meet the statutory requirement of timely action.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*