## FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GEORGE SOULIOTES,
            *Petitioner-Appellant,*

v.

MIKE EVANS, Warden; ANTHONY
HEDGPETH, Warden,
            *Respondents-Appellees.*

No. 08-15943

D.C. No.
1:06-cv-00667-
OWW-WMW

OPINION

Appeal from the United States District Court
for the Eastern District of California
Oliver W. Wanger, District Judge, Presiding

Argued and Submitted
February 12, 2010—San Francisco, California

Filed September 20, 2010

Before: Cynthia Holcomb Hall and M. Margaret McKeown,
Circuit Judges, and Thomas S. Zilly,* Senior District Judge.

Opinion by Judge McKeown;
Partial Concurrence and Partial Dissent by Judge Zilly

   * The Honorable Thomas S. Zilly, Senior United States District Judge
for the Western District of Washington, sitting by designation.

15943

## COUNSEL

Randall S. Luskey, Orrick, Herrington & Sutcliffe LLP, San Francisco, California, for the petitioner-appellant.

Kathleen A. McKenna, Deputy Attorney General, Office of the Attorney General of California, Fresno, California, for the respondents-appellees.

Sheryl Gordon McCloud, Law Offices of Sheryl Gordon McCloud, Seattle, Washington; Bob Barr, Atlanta, Georgia; Matthew D. Brown, Cooley Godward Kronish LLP, San Francisco, California, for the amici.

## OPINION

McKEOWN, Circuit Judge:

Petitioner George Souliotes, a California prisoner, is currently serving a life sentence for three murders by arson that he claims he did not commit. Souliotes seeks to prove his innocence based on the results of new fire testing methods that he claims could have only been reasonably discovered in 2005. We are called upon to decide whether his petition for writ of habeas corpus was timely filed under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, and, if so, which of his claims for relief are cognizable.

The district court dismissed Souliotes's habeas petition as untimely because it was filed five days after AEDPA's one-year limitations period set forth at 28 U.S.C. § 2244(d)(1)(A). However, in doing so, the district court rejected Souliotes's invocation of the limitations period at § 2244(d)(1)(D) based on the date on which the factual predicate of his innocence claim could have been reasonably discovered. Contrary to the district court's approach, § 2244(d)(1)(D) does not require that petitioners exercise the maximum diligence possible in uncovering the factual bases of their claims, but only "due" or "reasonable" diligence. Thus, we reverse the district court's dismissal of the habeas petition and remand for expedited proceedings to determine when an inmate in Souliotes's position could have discovered the new evidence with reasonable diligence.

Because we also hold that § 2244(d)(1)(D) applies only to Souliotes's innocence claim, and not his claims for relief that are not based on new evidence, we must also address his claims for equitable tolling and application of the "actual innocence gateway" to the AEDPA statute of limitations. *See Schlup v. Delo*, 513 U.S. 298 (1995). We affirm the denial of equitable tolling because the failure of Souliotes's attorney to note the correct date on which Souliotes's state court decision became final is not an "extraordinary circumstance," but rather an instance of ordinary negligence. *Holland v. Florida*, 130 S.Ct. 2549, 2564 (2010). Our recent precedent that AEDPA does not include an innocence gateway in its statute of limitations forecloses Souliotes's gateway claim. *See Lee v. Lampert*, 610 F.3d 1125, 1128-31 (9th Cir. 2010). As a result, Souliotes's additional claims for relief are time-barred.

## BACKGROUND

Souliotes challenges his May 2000 conviction for arson and three counts of murder with special circumstances based on newly discovered evidence derived from scientific methods that were not available at the time of trial. Souliotes alleges that new expert testimony refutes the key evidence the prosecution used to link him to the residential fire that killed three people. In addition to claiming actual innocence, Souliotes presents claims of ineffective assistance of counsel, violation of the Vienna Convention, and juror misconduct.

Souliotes was tried twice. At the first trial, Souliotes's counsel presented evidence, including testimony from fourteen witnesses, to support the theory that the fire was an accident and undermine the credibility of the prosecution's witnesses and the prosecution's "financial motive" theory. The first jury hung. At the second trial, Souliotes was represented by the same attorney, who this time put on only one witness, an individual who had served as a prosecution witness at the first trial. Souliotes was convicted on all charges and sentenced to life without the possibility of parole.

During Souliotes's second trial, the prosecution relied heavily on scientific evidence indicating that a liquid was used to ignite the fire. After the fire, this liquid left residues of medium petroleum distillates ("MPDs") at the scene. A prosecution witness testified that Souliotes's shoes also contained MPDs.[1]

The prosecution characterized the MPDs on Souliotes's shoes as "the most conclusive scientific evidence." "What set the fire?" the prosecution asked at closing argument. "Medium petroleum distillates." The prosecution concluded:

> [T]his was an arson. From that flows the rest. From that the finger of guilt points to the defendant. Doesn't point to the one-armed man. It points to George Souliotes because he's the one. *The shoes tell the tale.* He summoned that demon that morning. He poured that liquid on the ground and he brought that demon to life and that demon took Michelle, Daniel, and Amanda. He is responsible, he is guilty, and justice accordingly demands that he be found that way.

In 1997, before Souliotes's trials, John Lentini, a certified criminalist, chemist, and arson investigator, was asked to analyze twenty-one samples of physical evidence. Lentini was asked to determine if any of the samples contained residues of ignitable liquids. Lentini tested the samples and analyzed the results, applying the national standards in effect at the time for gas chromatography-mass spectrometry ("GC-MS"). The test data provided a "chemical fingerprint" of measured chemical compounds, but the method only identified a chemical as being within a class of chemicals, and it did not distinguish between different chemical compounds in the same class.

---

[1]The same witness acknowledged on cross-examination that glues and adhesives used to manufacture shoes can lead to the presence of MPDs.

In his original 1997 testing, Lentini found that four items all exhibited the presence of MPDs. Items 3 and 5 were carpet and carpet foam collected from the fire scene, and items 16 and 17 were a pair of Souliotes's shoes. At the time, Lentini concluded that "the MPD found on the shoes could not be excluded as having come from the same source of MPD found on items 3 and 5, collected from the scene of the fire." Lentini was not called as a witness in either of Souliotes's trials.

In 2005, Souliotes's sister contacted Lentini. Since 1997, Lentini had spent a considerable amount of time researching methods by which distinctions could be made within chemical compound classes, such as MPDs. Lentini reexamined the MPD evidence and found that "[b]y removing what I now know to be superfluous data recorded by the GC-MS data, . . . it was possible to make distinctions among the separate compounds within the chemical class of MPD." Specifically, he "found that there were, in fact, chemical differences between the MPDs found on items 3 and 5 (from the fire scene) and items 16 and 17 (the defendant's shoes)." On September 21, 2005, he wrote a letter to Souliotes's sister and informed her of these new findings.

In December 2005, Lentini prepared a report detailing his test methods and results and concluding that:

> [T]he residue on the shoes and the residue in the scene could not have had a common origin. There is thus no chemical 'match' between the ignitable liquid found at the scene of the fire and the residue in defendant's shoes.

Shortly after, Lentini signed a declaration, which Souliotes attached to his federal habeas petition filed on May 30, 2006.[2]

_____

[2]Between 2000 and 2006, Souliotes exhausted his state remedies.

However, Souliotes's petition was late. Based on a docket entry at the California Court of Appeal, Souliotes's counsel believed that only 324 days of the AEDPA one-year limitations period after the entry of a final judgment had elapsed and that he thus had forty-one days to file his habeas petition. *See* 28 U.S.C. § 2244(d)(1)(A). But Souliotes actually only had thirty-six days left and filed his petition five days after it was due.

The state moved to dismiss Souliotes's petition as time-barred, and Souliotes raised three arguments in opposition to dismissal. First, Souliotes argued that his petition was entitled to additional tolling under § 2244(d)(1)(D) based on the newly discovered evidence of his innocence. Second, Souliotes sought equitable tolling based on exceptional circumstances that caused him to be late. Third, Souliotes sought to invoke the innocence gateway under *Schlup*, arguing that his actual innocence overcame the AEDPA limitations period. The district court dismissed Souliotes's petition as time-barred, and this appeal followed.

## ANALYSIS

### I. SECTION 2244(d)(1)(D)

**[1]** We consider first whether Souliotes's actual innocence claim was timely presented to the district court. Section 2244(d)(1) provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Souliotes argues that he is entitled to the triggering date at § 2244(d)(1)(D)—discovery of the factual predicate of his actual innocence claim on September 21, 2005, the date of Lentini's letter to his sister.

**[2]** The district court rejected Souliotes's contention:

Petitioner does not claim that any obstacle prevented him from asking Lentini to re-test the evidence or seeking another opinion about the evidence sooner . . . and [the fact] that Petitioner did not uncover the facts until September 2005 does not make them undiscoverable.

The district court applied an incorrect diligence standard. As our sister circuits have recognized, § 2244(d)(1)(D) does not demand the maximum diligence possible, but only "due" or "reasonable" diligence. *See Starns v. Andrews*, 524 F.3d 612, 618-19 (5th Cir. 2008); *Wilson v. Beard*, 426 F.3d 653, 660-62 (3d Cir. 2005); *Moore v. Knight*, 368 F.3d 936, 939-40 (7th Cir. 2004); *Wims v. United States*, 225 F.3d 186, 190 n.4 (2d Cir. 2000).

**[3]** Souliotes need not show that some obstacle made the information in Lentini's declaration previously "undiscoverable" or that he could not have obtained at an earlier date through any means conceivable. Rather, he need establish only when a *reasonable* investigation would have uncovered the facts he alleges are newly discovered. *See Moore*, 368 F.3d at 939-40.

**[4]** In addition, § 2244(d)(1)(D)'s due diligence requirement is an objective standard that considers the petitioner's specific situation. *See Moore*, 368 F.3d at 940 (noting that "a due diligence inquiry should take into account that prisoners are limited by their physical confinement"); *Easterwood v. Champion*, 213 F.3d 1321, 1323 (10th Cir. 2000) (holding that, under § 2244(d)(1)(D), "a case is discoverable by 'due diligence' on the date the opinion became accessible in the prison law library, not the date the opinion was issued."); *see also Johnson v. Dretke*, 442 F.3d 901, 907-08 (5th Cir. 2006) (interpreting the nearly identical due diligence language in 28 U.S.C. § 2244(b)(2)(B)). The proper focus of the inquiry is therefore when Souliotes himself would have learned of the new evidence had he exercised reasonable care.

Souliotes asserts that he could not have previously discovered the existence of new scientific techniques for distinguishing between MPD chemical compounds through any reasonable investigation, such as monitoring court decisions or scientific literature relating to fire science. According to Lentini, his 2005 findings used scientific techniques that were not made widely public until 2006, when Lentini's book was published. The Innocence Project similarly contends in its amicus brief that "as of 2005, when Lentini re-examined his earlier findings, the . . . technical testing standard for MPDs used by Lentini for the 1997 trial had not changed in relevant part, making Lentini's re-testing of the samples for intra-class distinctions a true innovation."

The state rejoins that:

> Souliotes knew the factual basis for the claim at the
> time he was convicted: that is, if Souliotes did not
> set the fire, he knew the chemicals on his shoes did
> not come from the MPDs tested at the fire scene.
> Knowing this, he should have sought assistance in
> developing his claim before 2005.

The state's circular argument points out the obvious—that an
innocent defendant is aware of his innocence from the time he
is convicted—and it is not helpful. Rather, the application of
§ 2244(d)(1)(D) turns on when Souliotes could have reason-
ably discovered the evidence based on the new developments
in testing methods, which Souliotes alleges were not widely
known prior to 2005 and not published until 2006.

   [5] We conclude that an evidentiary hearing is necessary to
determine when the scientific techniques used by Lentini in
2005 to discriminate among the MPD compounds were devel-
oped, and when such information would have become avail-
able to an inmate like Souliotes. Accordingly, we reverse the
district court's dismissal of Souliotes's habeas petition, and
we remand for an expedited evidentiary hearing to determine
when an inmate in Souliotes's position could have discovered
the new MPD evidence with due diligence.[3]

   [6] We next consider whether the triggering date at
§ 2244(d)(1)(D) applies to *all* the claims Souliotes presents in
his habeas petition, or to his actual innocence claim alone. We
address this issue because Lentini's 2005 findings do not form
the factual predicate of Souliotes's claims of ineffective assis-
tance of counsel, violation of the Vienna Convention, or juror
misconduct, and those claims were presented to the district
court more than one year after Souliotes's conviction became
final.

---

[3]We order an expedited hearing so that Souliotes, who is now almost
seventy years old, and who has been incarcerated since 1997, may have
an opportunity for meaningful review of his innocence claim.

Souliotes contends that the triggering date at § 2244(d)(1)(D) should apply to all his claims, including the claims that are not based on newly discovered evidence. Two of our sister circuits have split over this issue. In *Walker v. Crosby*, the Eleventh Circuit held that "[t]he statute of limitations in § 2244(d)(1)(D) applies to the application as a whole; individual claims within an application cannot be reviewed separately for timeliness." 341 F.3d 1240, 1245 (11th Cir. 2003). Emphasizing the reference in § 2244(d)(1) to "an *application* for a writ of habeas corpus," the court reasoned that "[t]he statute directs the court to look at whether the 'application' is timely, not whether the individual 'claims' within the application are timely." *Id.* at 1243 (emphasis added).

**[7]** The Third Circuit rejected this position in *Fielder v. Varner*, 379 F.3d 113 (3d Cir. 2004) (Alito, J.), holding instead that § 2244(d)(1) applies on a claim-by-claim basis. Rather than focus solely on the term "application" in § 2244(d)(1), the court looked to the text of § 2244(d)(1)(D), which refers to "the date on which the factual predicate of the *claim or claims* presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D) (emphasis added). As the court explained, "[a]pplying this language in a case [like Souliotes's] in which multiple claims are presented poses a problem." *Fielder*, 379 F.3d at 117-18.

> The reference to "the latest" date in § 2244(d)(1) tells a court how to choose from among the four dates specified in subsections (A) through (D) *once those dates are identified*. This language does not tell a court how to identify the date specified in subsection (D) in a case in which the application contains multiple claims. Accordingly, there is nothing in § 2244(d) that suggests that a court should follow the *Walker* interpretation and select the *latest* date on which the factual predicate of any claim presented in a multi-claim application could have reasonably

been discovered. It would be just as consistent with
the statutory language to pick the *earliest* date.

*Id.* at 118. Thus, the *Walker* interpretation failed on its own
terms.

The court in *Fielder* went on to identify two reasons why
that the statute of limitations in § 2244(d)(1) should be
applied on a claim-by-claim basis. First, this approach is con-
sistent with how statutes of limitations are generally applied,
and Congress made no indication of departing from this
approach in AEDPA. *Id.* at 118-19. Second, the claim-by-
claim approach avoids the perverse result of "permitting a
late-accruing federal habeas claim to open the door for the
assertion of other claims that had become time-barred years
earlier." *Id.* at 120.[4]

**[8]** We adopt the reasoning in *Fielder* and hold that
§ 2244(d)(1) requires consideration of the appropriate trigger-
ing date for each claim presented in the application. Accord-
ingly, here § 2244(d)(1)(D) provides the triggering date for
Souliotes's substantive actual innocence claim, which is based
on newly discovered evidence, but § 2244(d)(1)(A) cabins the
limitations period as to Souliotes's other habeas claims. As a
result, those other claims are time-barred unless he can prevail
on his equitable tolling or gateway claims.

## II. EQUITABLE TOLLING

Souliotes seeks equitable tolling based on his counsel's
reliance on an ambiguous docket entry. Section 2244(d)(1)(A)
instructs courts to calculate the date on which the petitioner's

---

[4]This approach is also consistent with Supreme Court dicta interpreting
§ 2244(d)(1)(D) to require claim-by-claim consideration. *See Pace v.
DiGuglielmo*, 544 U.S. 408, 416 n.6 (2005) (citing § 2244(d)(1)(D) in dis-
cussion of whether state post-conviction petition was "properly filed"
under § 2244(d)(2)).

judgment "became final by the conclusion of direct review." The operative date for Souliotes is ninety days after the California Supreme Court's denial of his petition for review on October 16, 2002. *See Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999). This date is correctly indicated in the on-line docket of the California Supreme Court. The on-line docket of the California Court of Appeal, however, contains an entry on October 22, 2002 that reads: "Petition for review denied in Supreme Court." The "Notes" section of this October 22, 2002 entry in turn reads: "denied 10/16/02 ea member of ct notified by cc mail." Based on this entry, Souliotes's habeas counsel took October 22, 2002, rather than October 16, 2002, to be the triggering date for the one-year limitations period under § 2244(d)(1)(A). This mistake caused counsel to file Souliotes's petition five days late.

**[9]** In *Holland v. Florida*, the Supreme Court recently confirmed that the AEDPA limitations period is not jurisdictional and is subject to equitable tolling. 130 S.Ct. at 2560; *see also Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 n.2 (9th Cir. 2009). A petitioner "is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 130 S.Ct. at 2562 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). In *Holland*, the Court rejected the "extraordinary circumstance" standard applied by the Eleventh Circuit as "too rigid," under which even "grossly negligent" attorney conduct would not warrant tolling absent a showing of "bad faith, dishonesty, divided loyalty, mental impairment or so forth on the lawyer's part." *Id.* at 2562-63 (internal quotation marks omitted). Rather, the tolling analysis is a flexible, equitable inquiry in which courts "exercise judgment in light of prior precedent, but with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case." *Id.* at 2563.

**[10]** Under our precedent, Souliotes does not warrant a grant of equitable tolling. The clerical error that occurred here

is hardly "extraordinary," and it is reasonable to expect Souliotes's counsel to have determined the correct date on which the state court judgment became final. We have repeatedly held that counsel's negligent miscalculation of the limitations period does not entitle a petitioner to equitable relief. *Miranda v. Castro*, 292 F.3d 1063, 1066-68 & n.4 (9th Cir. 2002); *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2001); *see also Holland*, 130 S.Ct. at 2564 (noting that "a garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling" (internal quotation marks and citations omitted)). Because Souliotes cannot show an "extraordinary circumstance" that prevented him from filing on time, his request for equitable tolling fails.

## III. INNOCENCE GATEWAY

Souliotes additionally argues that, despite his untimely filing, he may yet pursue his ineffective assistance, Vienna Convention, and juror misconduct claims under the actual innocence gateway established in *Schlup v. Delo*. Souliotes's claim, however, is squarely foreclosed by our recent decision in *Lee v. Lampert*.

[11] As we explained in *Lee*, *Schlup* created an actual innocence exception to the limitations on second or successive habeas petitions and to state procedural requirements. *Lee*, 610 F.3d at 1131. Under *Schlup*, a petitioner's "otherwise-barred claims [may be] considered on the merits . . . if his claim of actual innocence is sufficient to bring him within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice.' " *Carriger v. Stewart*, 132 F.3d 463, 477 (9th Cir.1997) (en banc) (quoting *Schlup*, 513 U.S. at 315).

[12] Although we previously declined to address whether the gateway applied to AEDPA's statute of limitations for original petitions, *see Majoy v. Roe*, 296 F.3d 770, 777 (9th

Cir. 2002), our court in *Lee* joined the majority of our sister circuits to hold that no such exception exists under § 2244(d)(1). *See Lee*, 610 F.3d at 1128 (citing cases). As we explained at length:

> The omission of "actual innocence" from the enumerated list of exceptions in the statutory text is significant . . . . Since section 2244(d) comprises six paragraphs defining its one-year limitations period *in detail* and *adopting very specific exceptions* . . ., Congress likely did not conceive that the courts would add new exceptions and it is even more doubtful that it would have approved of such an effort. It is not our place to engraft an additional judge-made exception onto congressional language that is clear on its face . . . . That Congress created three exceptions to the general rule that the limitations period begins upon the conclusion of direct review indicates it did not intend other exceptions, and there is no evidence to the contrary.

*Id.* at 1129-30 (internal quotation marks and citations omitted). This plain reading was additionally "buttressed by the explicit enumeration of an actual innocence exception in . . . section 2244(b)(2)(B), which governs the filing of second or successive habeas petitions." *Id.* at 1130.

**[13]** *Lee* precludes any argument that Souliotes has recourse to the innocence gateway. Consequently, we affirm the district court's rejection of Souliotes's gateway claim.

### CONCLUSION

Because the district court applied an incorrect diligence standard under § 2244(d)(1)(D), we reverse the district court's dismissal of Souliotes's habeas petition and remand for an expedited evidentiary hearing to determine when an inmate in Souliotes's position could have discovered the new MPD evi-

dence with due diligence. If the district court concludes that Souliotes satisfies the diligence requirement of § 2244(d)(1)(D), the district court shall adjudicate the merits of Souliotes's actual innocence claim on an expedited basis. We affirm the district court's denial of equitable tolling based on counsel's miscalculation of the limitations period at § 2244(d)(1)(A) as well as the rejection of Souliotes's gateway claim. Thus, Souliotes's remaining claims for relief are time-barred.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED for proceedings consistent with this opinion. The parties shall bear their own costs on appeal.

---

ZILLY, Senior District Judge, concurring in part and dissenting in part:

This case requires much more from us than the majority has acknowledged, and I must respectfully dissent. Although I concur with the majority's conclusion that the district court applied an incorrect diligence standard when assessing whether Souliotes timely presented his new "MPD" evidence pursuant to 28 U.S.C. § 2244(d)(1)(D),[1] I cannot abide the "fool's errand," *In re Davis*, 130 S. Ct. 1, 4 (2009) (Scalia, J., dissenting), on which the majority sends the district court. By incorrectly holding that the decision in *Lee v. Lampert*, 610 F.3d 1125 (9th Cir. 2010), "squarely foreclosed" Souliotes from pursuing his ineffective assistance of counsel and other constitutional claims via the "actual innocence" gateway first recognized in *Schlup v. Delo*, 513 U.S. 298 (1995),[2] the

---

[1] I also concur with the majority that Souliotes is not entitled to equitable tolling premised upon his counsel's miscalculation of the deadline for filing his federal habeas petition.

[2] The *Schlup* decision was succinctly explained in *Carriger v. Stewart*, 132 F.3d 463 (9th Cir. 1997) (en banc): "The terminology in this area is

majority has left Souliotes with a stand-alone substantive actual innocence claim. Having done so, the majority then proceeds to require that the district court conduct an evidentiary hearing on whether Souliotes's stand-alone substantive actual innocence claim was timely filed without even addressing whether such claim is cognizable in a non-capital case.[3]

---

sometimes confusing because the 'miscarriage of justice' exception [recognized in *Schlup*] . . . has been described as a showing of 'actual innocence.' . . . [It] is not an independent avenue to relief. Rather, if established, it functions as a 'gateway,' permitting a habeas petitioner to have considered on the merits claims of constitutional error that would otherwise be procedurally barred." *Id.* at 477.

[3]In *Herrera v. Collins*, 506 U.S. 390 (1993), the Supreme Court held that stand-alone substantive claims of actual innocence are not cognizable in federal habeas actions; habeas relief is available only when a substantive claim of innocence is tied to an independent constitutional violation. *Id.* at 400-05. The *Herrera* Court reasoned that "federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution — not to correct errors of fact." *Id.* at 400. Thus, insufficiency of the evidence does not constitute the requisite independent constitutional violation for asserting a habeas claim of actual innocence; a sufficiency review is limited to "record evidence" and may not extend to newly discovered evidence. *Id.* at 401-02 (discussing *Jackson v. Virginia*, 443 U.S. 307 (1979)). The question left open in *Herrera* was whether execution of an innocent person qualified as an independent constitutional violation that would render a related substantive claim of actual innocence cognizable in a habeas proceeding. Remarkably, 17 years have elapsed since *Herrera* and only very recently has a court explicitly recognized a stand-alone actual innocence claim in a case involving the death penalty. *In re Davis*, __ F. Supp. 2d __, 2010 WL 3385081 (S.D. Ga. 2010) (concluding that "executing the 'actually' innocent violates the cruel and unusual punishment clause of the Eighth Amendment"). During the interim, however, at least two circuits have concluded that stand-alone actual innocence claims are not cognizable in non-capital cases. *Allen v. Beck*, 179 Fed. Appx. 548, 551 n.2 (10th Cir. 2006); *Milone v. Camp*, 22 F.3d 693, 700 (7th Cir. 1994). Our circuit has so far declined to address the issue. *Osborne v. Dist. Attorney's Office*, 521 F.3d 1118, 1131 (9th Cir. 2008), *rev'd on other grounds*, 129 S. Ct. 2308, 2321-22 (2009). Although I would hold that continuing to incarcerate the "actually innocent" is just as violative of the Eighth Amendment as executing them, *see Osborne*, 521 F.3d at 1130 (indicating that whether a distinction should be made between capital and non-capital cases remains an open question, although *Herrera* did suggest equal treatment), the district court will have, on remand, only the contrary views of our sister circuits.

The majority acknowledges that it is "called upon to decide" whether Souliotes's timely "claims for relief are cognizable," yet fails to decide this critical issue. I believe that the majority should address this important issue now. If the majority were to conclude that a stand-alone substantive actual innocence claim in a non-capital case is precluded by *Herrera*, no purpose would be served by conducting an evidentiary hearing to determine when Souliotes could have discovered the "MPD" evidence through the exercise of reasonable care. The majority has thereby failed to provide meaningful guidance to the district court, and it may give Souliotes potentially false hope of federal habeas relief.[4]

For related reasons, I also dissent from the majority's blind reliance on the decision in *Lee v. Lampert*, 610 F.3d 1125 (9th Cir. 2010), to preclude Souliotes from pursuing his otherwise time-barred constitutional claims via the *Schlup* "actual innocence" or "miscarriage of justice" gateway. *Lee* is distinguishable from this case, and the majority's conclusion that Souliotes's claim is "squarely foreclosed" by *Lee* is just plain wrong.

The starting point for discussion is the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214. The AEDPA imposes on federal habeas petitions a one-year time limit that commences on the latest of the following four triggering dates:

> (A) the date on which the judgment became final

---

[4]Even if, on remand, the district court were to hold that a stand-alone substantive actual innocence claim is cognizable in a non-capital habeas case, Souliotes would face the task of "affirmatively prov[ing] that he is probably innocent." *Carriger*, 132 F.3d at 476-77 (deciding en banc that a stand-alone substantive actual innocence claim, if cognizable, requires an "extraordinarily high" showing, stronger than what is required to establish insufficiency of the evidence to convict and going beyond demonstrating doubt about guilt).

by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). In *Lee*, the petitioner filed his habeas application more than one year after the challenged judgment became final, thus rendering his petition time-barred under the first triggering date, and he made no contention that any of the other three triggering dates of the AEDPA applied. More specifically, Lee asserted no state-created impediment to timely filing, no relevant change in the law, and, most importantly, no newly discovered evidence.[5] Rather, Lee sought to add either a fifth triggering date to § 2244(d)(1) or a tolling mechanism for "actual innocence gateway" claims brought pursuant to *Schlup*. The *Lee* decision rejected this proposed "amendment" to the AEDPA's one-year limit, and held that Lee's habeas petition was time barred.

_____

[5]Although Lee presented "new" evidence (evidence not presented at trial) in connection with his habeas petition, the evidence was not "newly discovered." *See Lee v. Lampert*, 607 F. Supp. 2d 1204, 1217 (D. Or. 2009), *rev'd*, 610 F.3d 1125 (9th Cir. 2010).

In contrast, Souliotes's habeas petition presents multiple claims, one based on newly discovered evidence, and the others filed more than one year after the challenged conviction became final. In other words, Souliotes presents both (i) a claim that is potentially timely under one of the four time-counting provisions of the AEDPA, namely § 2244(d)(1)(D), and (ii) affiliated claims, which would themselves be time barred, but which Souliotes seeks to bring through the *Schlup* "actual innocence" or "miscarriage of justice" gateway. This scenario differs substantially from the one presented in *Lee*. In *Lee*, the petitioner asserted a *freestanding* gateway claim; he sought to pass through the *Schlup* portal without satisfying one of the four means by which a habeas claim may be deemed timely under the AEDPA. Souliotes, however, brings *affiliated* gateway claims, which are tethered to his presumably timely claim based on newly discovered evidence. Thus, unlike Souliotes, Lee attempted to invoke the benefit of *Schlup* without exercising the diligence required by the AEDPA.

This distinction between freestanding and affiliated *Schlup* gateway claims has been recognized by at least one of our sister circuits. *See Araujo v. Chandler*, 435 F.3d 678 (7th Cir. 2005). In *Araujo*, the Seventh Circuit differentiated between freestanding gateway claims and actual innocence claims as to which the petitioner has met "the statutory requirements of timely action." *Id.* at 680 (quoting *Escamilla v. Jungwirth*, 426 F.3d 868, 872 (7th Cir. 2005)). With regard to the former, no tolling or exception to the one-year limit is available. *Id.* at 682. As to the latter, the Seventh Circuit left open the possibility that a petitioner may step through the "actual innocence" or "miscarriage of justice" gateway and bring along otherwise barred constitutional claims.

This analysis is faithful to the principles underlying the *Schlup* gateway. In *Schlup*, the petitioner had been sentenced to death and had filed his first application for federal habeas relief *pro se*. His second federal habeas petition was filed by new counsel, and raised a number of claims, including that (i)

his execution would be unconstitutional because he was actually innocent, (ii) trial counsel was ineffective for failing to interview alibi witnesses, and (iii) the prosecution withheld exculpatory evidence. 513 U.S. at 307. Ordinarily, the claims raised in Schlup's second habeas petition would have been procedurally barred because they were not presented in his first habeas petition, and he was "unable to establish 'cause and prejudice' sufficient to excuse his failure" to allege the claims earlier. *Id.* at 314 (quoting *McCleskey v. Zant*, 499 U.S. 467, 493-494 (1991)).

The Supreme Court, however, held that Schlup fell within the "narrow class of cases . . . implicating a fundamental miscarriage of justice." *Id.* at 315 (quoting *McCleskey*, 499 U.S. at 494). The Supreme Court explained that, although Schlup asserted a claim of actual innocence, the claim was not substantive and did not "by itself provide a basis for relief." *Id.* at 315 & n.31. Instead, Schlup was raising procedural actual innocence claims, which the Supreme Court took great care to distinguish from the stand-alone substantive actual innocence claims precluded by *Herrera*. *Id.* at 314-15. The *Schlup* Court observed that the procedural actual innocence claim simply operated as a gateway for Schlup's ineffective assistance of counsel and withholding of evidence claims. *Id.* at 315. Because Schlup's assertion of innocence was accompanied by claims of constitutional error at trial, his conviction was not entitled to the same degree of respect as one, like Herrera's, that was the product of an error-free trial. *Id.* at 316. Schlup's procedural claim of innocence opened the gateway for his otherwise barred constitutional claims because his new evidence[6] of innocence created sufficient doubt about guilt "to justify the conclusion that his execution would be a miscarriage of justice." *See id.*

---

[6]The "new evidence" supporting a *Schlup* gateway claim need not be "newly discovered." *See Schlup*, 513 U.S. at 316.

In further defining the "miscarriage of justice" gateway, the Supreme Court concluded that the more lenient standard of *Murray v. Carrier*, 477 U.S. 478 (1986), rather than the stringent requirement of *Sawyer v. Whitley*, 505 U.S. 333 (1992), governs whether the *Schlup* portal should be opened. The *Carrier* test, when restated in the context of the *Schlup* gateway, is whether the petitioner has shown "more likely than not that no reasonable juror would have convicted him in the light of the new evidence." 513 U.S. at 327. Under *Schlup*, in assessing the adequacy of the petitioner's gateway showing, a district court is not bound by the rules of admissibility applicable at trial, but instead should consider "the probative force of relevant evidence that was either excluded or unavailable at trial." *Id.* at 327-28. *Schlup* requires the district court to presume that jurors "consider fairly all of the evidence presented" and "conscientiously obey the instructions of the trial court requiring proof beyond a reasonable doubt," and then, in light of the new evidence, to "make a probabilistic determination about what reasonable, properly instructed jurors would do." *Id.* at 329.

In crafting the "miscarriage of justice" gateway, the Supreme Court sought "to balance the societal interests in finality, comity, and conservation of scarce judicial resources" against "the individual interest in justice that arises . . . . [when] constitutional error has resulted in the conviction of one who is actually innocent of the crime." *Id.* at 324. These competing concerns are best taken into account by distinguishing between freestanding and affiliated gateway claims. A freestanding gateway claim, like the one advanced in *Lee*, might know no bounds of time, and such attempt to circumvent the limitations set forth in the AEDPA flies in the face of the principles of finality underlying the statute and recognized in the *Schlup* decision. In contrast, affiliated *Schlup* gateway claims, being associated with another habeas claim as to which the diligence requirements of the AEDPA have been met, tip the scales in favor of "the individual interest in justice."

In *Lee*, the majority distinguished *Schlup* as applying to "second or successive habeas petition limitations," as opposed to time limitations for bringing a first habeas petition. *See* 601 F.3d at 1131. The *Lee* majority reasoned that, because *Schlup*, which predated the AEDPA, did not expressly concern a statute of limitations, Congress was neither relying on nor addressing *Schlup* in creating the AEDPA's one-year clock or in defining the dates on which it would begin to run. Although this reasoning is sufficient for purposes of *Lee*, the analysis cannot end there in our case. Implicit within the *Schlup* decision was the conclusion that Schlup's habeas claims were late — they should have been made earlier, in his first habeas petition. Thus, although *Schlup* did not deal explicitly with a limitations period, the opinion did speak to whether untimely claims may be brought under certain circumstances.

By extending *Lee*, in cursory fashion, beyond its proper bounds, and thereby limiting *Schlup* to second or successive petitions, the majority punishes Souliotes for the diligence he has displayed in presenting, in his first habeas petition, his claim based on newly discovered evidence. The AEDPA expressly permits a second or successive petition raising a claim based on newly discovered evidence establishing that "no reasonable factfinder would have found the applicant guilty." 28 U.S.C. § 2244(b)(2)(B). Thus, although the AEDPA and *Schlup* would have allowed Souliotes to bring *all* of his claims in a second or successive petition, he is precluded from doing so on his first petition because the majority fails to recognize the distinction between freestanding and affiliated *Schlup* gateway claims. This conclusion is misguided and results in a fundamental miscarriage of justice. This result is also inconsistent with the importance ascribed to a first federal habeas petition. *See Lonchar v. Thomas*, 517 U.S. 314, 324 (1996) ("Dismissal of a *first* federal habeas petition is a particularly serious matter, for that dismissal denies the petitioner the protections of the Great Writ entirely, risking injury to an important interest in human liberty.") (emphasis in original); *cf. House v. Bell*, 547 U.S. 518 (2006)

(applying *Schlup* in the context of a first federal habeas petition involving claims defaulted by failure to present them in the state courts).

By ignoring the challenges Souliotes will face in pursuing a stand-alone actual innocence claim, the majority does Souliotes a great disservice. He is forced to marshal all his resources to establish that he timely presented his new "MPD" evidence, only to then face a likely futile battle concerning the cognizability of his stand-alone substantive actual innocence claim. Meanwhile, for ill-explained reasons, the majority eliminates the only mechanism, the *Schlup* gateway, by which Souliotes might have presented his affiliated independent constitutional claims. I would instead reverse and remand for further proceedings so that, in addition to determining whether Souliotes timely presented his newly discovered evidence under § 2244(d)(1)(D), the district court may assess, in the first instance, whether Souliotes can make the requisite threshold showing under *Schlup*. For purposes of the *Schlup* gateway, Souliotes "need not show that he is 'actually innocent' of the crime he was convicted of committing; instead, he must show that 'a court cannot have confidence in the outcome of the trial.' " *See Majoy v. Roe*, 296 F.3d 770, 776 (9th Cir. 2002) (quoting *Carriger*, 132 F.3d at 478 (quoting *Schlup*, 513 U.S. at 316)). On such remand, the district court would consider all of the evidence, including not only the newly discovered evidence but also the anticipated testimony of witnesses who were available but were not called as witnesses by Souliotes's allegedly ineffective trial counsel.[7] If Souliotes were to prevail as to the timeliness of his newly dis-

---

[7]Souliotes presents a compelling case for habeas relief. In his first trial, his trial counsel called fourteen witnesses, whose testimony undermined the prosecution's case and resulted in a hung jury. In his second trial, the same trial counsel called only one witness, an individual who had testified for the prosecution during the first trial. This vastly reduced level of representation has not been explained as somehow strategic or the result of witness unavailability, which presumably could have been addressed under Federal Rule of Evidence 804. Thus, if allowed to pursue his ineffective

covered evidence and as to the threshold showing required under *Schlup*, then all of Souliotes's constitutional habeas claims would be eligible for consideration on the merits.

For the foregoing reasons, I respectfully dissent.

---

assistance of counsel claim, Souliotes could likely show that his conviction was not the product of an error-free trial. In addition, Souliotes proffers new scientific evidence that is alleged to contradict the key piece of evidence linking him with the crime scene, thereby casting significant doubt on the accuracy of the verdict. Souliotes epitomizes the type of habeas petitioner the *Schlup* gateway was intended to benefit.