ZILLY, Senior District Judge,
concurring in part and dissenting in part:
This case requires much more from us than the majority has acknowledged, and I must respectfully dissent. Although I concur with the majority’s conclusion that the district court applied an incorrect diligence standard when assessing whether Souliotes timely presented his new “MPD” evidence pursuant to 28 U.S.C. § 2244(d)(1)(D),[1] I cannot abide the “fool’s errand,” In re Davis, — U.S. -, 130 S.Ct. 1, 4, 174 L.Ed.2d 614 (2009) (Scalia, J., dissenting), on which the majority sends the district court. By incorrectly holding that the decision in Lee v. Lampen, 610 F.3d 1125 (9th Cir.2010), “squarely foreclosed” Souliotes from pursuing his ineffective assistance of counsel and other constitutional claims via the “actual innocence” gateway first recognized in Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995),[2] the majority has left Souliotes with a stand-alone substantive actual innocence claim. Having done so, the majority then proceeds to require that the district court conduct an evidentiary hearing on whether Souliotes’s stand-alone substantive actual innocence claim was timely filed without even addressing whether such claim is cognizable in a non-capital case.[3] The majority acknowledges *1183 that it is “called upon to decide” whether Souliotes’s timely “claims for relief are cognizable,” yet fails to decide this critical issue. I believe that the majority should address this important issue now. If the majority were to conclude that a standalone substantive actual innocence claim in a non-capital case is precluded by Herrera, no purpose would be served by conducting an evidentiary hearing to determine when Souliotes could have discovered the “MPD” evidence through the exercise of reasonable care. The majority has thereby failed to provide meaningful guidance to the district court, and it may give Souliotes potentially false hope of federal habeas relief.[4]
For related reasons, I also dissent from the majority’s blind reliance on the decision in Lee v. Lampert, 610 F.3d 1125 (9th Cir.2010), to preclude Souliotes from pursuing his otherwise time-barred constitutional claims via the Schlup “actual innocence” or “miscarriage of justice” gateway. Lee is distinguishable from this case, and the majority’s conclusion that Souliotes’s claim is “squarely foreclosed” by Lee is just plain wrong.
The starting point for discussion is the Antiterrorism and Effective Death Penalty Act of 1996 (“AEDPA”), Pub.L. No. 104-132, 110 Stat. 1214. The AEDPA imposes on federal habeas petitions a one-year time limit that commences on the latest of the following four triggering dates:
(A)the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
*1184 28 U.S.C. § 2244(d)(1). In Lee, the petitioner filed his habeas application more than one year after the challenged judgment became final, thus rendering his petition time-barred under the first triggering date, and he made no contention that any of the other three triggering dates of the AEDPA applied. More specifically, Lee asserted no state-created impediment to timely filing, no relevant change in the law, and, most importantly, no newly discovered evidence.[5] Rather, Lee sought to add either a fifth triggering date to § 2244(d)(1) or a tolling mechanism for “actual innocence gateway” claims brought pursuant to Schlup. The Lee decision rejected this proposed “amendment” to the AEDPA’s one-year limit, and held that Lee’s habeas petition was time barred.
In contrast, Souliotes’s habeas petition presents multiple claims, one based on newly discovered evidence, and the others filed more than one year after the challenged conviction became final. In other words, Souliotes presents both (i) a claim that is potentially timely under one of the four time-counting provisions of the AED-PA, namely § 2244(d)(1)(D), and (ii) affiliated claims, which would themselves be time barred, but which Souliotes seeks to bring through the Schlup “actual innocence” or “miscarriage of justice” gateway. This scenario differs substantially from the one presented in Lee. In Lee, the petitioner asserted a freestanding gateway claim; he sought to pass through the Schlup portal without satisfying one of the four means by which a habeas claim may be deemed timely under the AEDPA. Souliotes, however, brings affiliated gateway claims, which are tethered to his presumably timely claim based on newly discovered evidence. Thus, unlike Souliotes, Lee attempted to invoke the benefit of Schlup without exercising the diligence required by the AEDPA.
This distinction between freestanding and affiliated Schlup gateway claims has been recognized by at least one of our sister circuits. See Araujo v. Chandler, 435 F.3d 678 (7th Cir.2005). In Araujo, the Seventh Circuit differentiated between freestanding gateway claims and actual innocence claims as to which the petitioner has met “the statutory requirements of timely action.” Id. at 680 (quoting Escamilla v. Jungwirth, 426 F.3d 868, 872 (7th Cir.2005)). With regard to the former, no tolling or exception to the one-year limit is available. Id. at 682. As to the latter, the Seventh Circuit left open the possibility that a petitioner may step through the “actual innocence” or “miscarriage of justice” gateway and bring along otherwise barred constitutional claims.
This analysis is faithful to the principles underlying the Schlup gateway. In Schlup, the petitioner had been sentenced to death and had filed his first application for federal habeas relief pro se. His second federal habeas petition was filed by new counsel, and raised a number of claims, including that (i) his execution would be unconstitutional because he was actually innocent, (ii) trial counsel was ineffective for failing to interview alibi witnesses, and (in) the prosecution withheld exculpatory evidence. 513 U.S. at 307, 115 S.Ct. 851. Ordinarily, the claims raised in Schlup’s second habeas petition would have been procedurally barred because they were not presented in his first habeas petition, and he was “unable to establish ‘cause and prejudice’ sufficient to excuse his failure” to allege the claims earlier. Id. at 314, 115 S.Ct. 851 (quoting McCleskey v. Zant, 499 U.S. 467, 493-494, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991)).
*1185 The Supreme Court, however, held that Schlup fell within the “narrow class of cases ... implicating a fundamental miscarriage of justice.” Id. at 315, 115 S.Ct. 851 (quoting McCleskey, 499 U.S. at 494, 111 S.Ct. 1454). The Supreme Court explained that, although Schlup asserted a claim of actual innocence, the claim was not substantive and did not “by itself provide a basis for relief.” Id. at 315 & n. 31, 115 S.Ct. 851. Instead, Schlup was raising procedural actual innocence claims, which the Supreme Court took great care to distinguish from the stand-alone substantive actual innocence claims precluded by Herrera. Id. at 314-15, 115 S.Ct. 851. The Schlup Court observed that the procedural actual innocence claim simply operated as a gateway for Schlup’s ineffective assistance of counsel and withholding of evidence claims. Id. at 315, 115 S.Ct. 851. Because Schlup’s assertion of innocence was accompanied by claims of constitutional error at trial, his conviction was not entitled to the same degree of respect as one, like Herrera’s, that was the product of an error-free trial. Id. at 316, 115 S.Ct. 851. Schlup’s procedural claim of innocence opened the gateway for his otherwise barred constitutional claims because his new evidence[6] of innocence created sufficient doubt about guilt “to justify the conclusion that his execution would be a miscarriage of justice.” See id.
In further defining the “miscarriage of justice” gateway, the Supreme Court concluded that the more lenient standard of Murray v. Carrier, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), rather than the stringent requirement of Sawyer v. Whitley, 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992), governs whether the Schlup portal should be opened. The Carrier test, when restated in the context of the Schlup gateway, is whether the petitioner has shown “more likely than not that no reasonable juror would have convicted him in the light of the new evidence.” 513 U.S. at 327, 115 S.Ct. 851. Under Schlup, in assessing the adequacy of the petitioner’s gateway showing, a district court is not bound by the rules of admissibility applicable at trial, but instead should consider “the probative force of relevant evidence that was either excluded or unavailable at trial.” Id. at 327-28, 115 S.Ct. 851. Schlup requires the district court to presume that jurors “consider fairly all of the evidence presented” and “conscientiously obey the instructions of the trial court requiring proof beyond a reasonable doubt,” and then, in light of the new evidence, to “make a probabilistic determination about what reasonable, properly instructed jurors would do.” Id. at 329, 115 S.Ct. 851.
In crafting the “miscarriage of justice” gateway, the Supreme Court sought “to balance the societal interests in finality, comity, and conservation of scarce judicial resources” against “the individual interest in justice that arises .... [when] constitutional error has resulted in the conviction of one who is actually innocent of the crime.” Id. at 324, 115 S.Ct. 851. These competing concerns are best taken into account by distinguishing between freestanding and affiliated gateway claims. A freestanding gateway claim, like the one advanced in Lee, might know no bounds of time, and such attempt to circumvent the limitations set forth in the AEDPA flies in the face of the principles of finality underlying the statute and recognized in the Schlup decision. In contrast, affiliated Schlup gateway claims, being associated with another habeas claim as to which the diligence requirements of the AEDPA have been met, tip the scales in favor of “the individual interest in justice.”
*1186 In Lee, the majority distinguished Schlup as applying to “second or successive habeas petition limitations,” as opposed to time limitations for bringing a first habeas petition. See 601 F.3d at 1131. The Lee majority reasoned that, because Schlup, which predated the AED-PA, did not expressly concern a statute of limitations, Congress was neither relying on nor addressing Schlup in creating the AEDPA’s one-year clock or in defining the dates on which it would begin to run. Although this reasoning is sufficient for purposes of Lee, the analysis cannot end there in our case. Implicit within the Schlup decision was the conclusion that Schlup’s habeas claims were late — they should have been made earlier, in his first habeas petition. Thus, although Schlup did not deal explicitly with a limitations period, the opinion did speak to whether untimely claims may be brought under certain circumstances.
By extending Lee, in cursory fashion, beyond its proper bounds, and thereby limiting Schlup to second or successive petitions, the majority punishes Souliotes for the diligence he has displayed in presenting, in his first habeas petition, his claim based on newly discovered evidence. The AEDPA expressly permits a second or successive petition raising a claim based on newly discovered evidence establishing that “no reasonable factfinder would have found the applicant guilty.” 28 U.S.C. § 2244(b)(2)(B). Thus, although the AED-PA and Schlup would have allowed Souliotes to bring all of his claims in a second or successive petition, he is precluded from doing so on his first petition because the majority fails to recognize the distinction between freestanding and affiliated Schlup gateway claims. This conclusion is misguided and results in a fundamental miscarriage of justice. This result is also inconsistent with the importance ascribed to a first federal habeas petition. See Lonchar v. Thomas, 517 U.S. 314, 324, 116 S.Ct. 1293, 134 L.Ed.2d 440 (1996) (“Dismissal of a first federal habeas petition is a particularly serious matter, for that dismissal denies the petitioner the protections of the Great Writ entirely, risking injury to an important interest in human liberty.”) (emphasis in original); cf. House v. Bell, 547 U.S. 518, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006) (applying Schlup in the context of a first federal habeas petition involving claims defaulted by failure to present them in the state courts).
By ignoring the challenges Souliotes will face in pursuing a stand-alone actual innocence claim, the majority does Souliotes a great disservice. He is forced to marshal all his resources to establish that he timely presented his new “MPD” evidence, only to then face a likely futile battle concerning the cognizability of his stand-alone substantive actual innocence claim. Meanwhile, for ill-explained reasons, the majority eliminates the only mechanism, the Schlup gateway, by which Souliotes might have presented his affiliated independent constitutional claims. I would instead reverse and remand for further proceedings so that, in addition to determining whether Souliotes timely presented his newly discovered evidence under § 2244(d)(1)(D), the district court may assess, in the first instance, whether Souliotes can make the requisite threshold showing under Schlup. For purposes of the Schlup gateway, Souliotes “need not show that he is ‘actually innocent’ of the crime he was convicted of committing; instead, he must show that ‘a court cannot have confidence in the outcome of the trial.’ ” See Majoy v. Roe, 296 F.3d 770, 776 (9th Cir.2002) (quoting Carriger, 132 F.3d at 478 (quoting Schlup, 513 U.S. at 316, 115 S.Ct. 851)). On such remand, the district court would consider all of the evidence, including not only the newly discovered evidence but also the anticipated testimony of witnesses who *1187 were available but were not called as witnesses by Souliotes’s allegedly ineffective trial counsel.[7] If Souliotes were to prevail as to the timeliness of his newly discovered evidence and as to the threshold showing required under Schlup, then all of Souliotes’s constitutional habeas claims would be eligible for consideration on the merits.
For the foregoing reasons, I respectfully dissent.

. I also concur with the majority that Souliotes is not entitled to equitable tolling premised upon his counsel's miscalculation of the deadline for filing his federal habeas petition.

. The Schlup decision was succinctly explained in Carriger v. Stewart, 132 F.3d 463 (9th Cir.1997) (en banc): "The terminology in this area is sometimes confusing because the 'miscarriage of justice’ exception [recognized in Schlup ] ... has been described as a showing of 'actual innocence.' ... [It] is not an independent avenue to relief. Rather, if established, it functions as a 'gateway,' permitting a habeas petitioner to have considered on the merits claims of constitutional error that would otherwise be procedurally barred.” Id. at 477.

. In Herrera v. Collins, 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993), the Supreme Court held that stand-alone substantive claims of actual innocence are not cognizable in federal habeas actions; habeas relief is available only when a substantive claim of innocence is tied to an independent constitutional violation. Id. at 400-05, 113 S.Ct. 853. The Hetrera Court reasoned that "federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution — not to correct errors of fact.” Id. at 400, 113 S.Ct. 853. Thus, insufficiency of the evidence does not constitute the requisite independent constitutional violation for asserting a habeas claim of actual innocence; a sufficiency review is limited to "record evidence” and may not extend to newly discovered evidence. Id. at 401-02, 113 S.Ct. 853 (discussing Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). The question left open in Hen-era was whether execution of an innocent person qualified as an independent constitutional violation that would render a related substantive claim of *1183 actual innocence cognizable in a habeas proceeding. Remarkably, 17 years have elapsed since Herrera and only very recently has a court explicitly recognized a stand-alone actual innocence claim in a case involving the death penally. In re Davis, 2010 WL 3385081 (S.D.Ga.2010) (concluding that "executing the 'actually' innocent violates the cruel and unusual punishment clause of the Eighth Amendment”). During the interim, however, at least two circuits have concluded that stand-alone actual innocence claims are not cognizable in non-capital cases. Allen v. Beck, 179 Fed.Appx. 548, 551 n. 2 (10th Cir.2006); Milone v. Camp, 22 F.3d 693, 700 (7th Cir.1994). Our circuit has so far declined to address the issue. Osborne v. Dist. Attorney’s Office, 521 F.3d 1118, 1131 (9th Cir.2008), rev’d on other grounds, - U.S. -, 129 S.Ct. 2308, 2321-22, 174 L.Ed.2d 38 (2009). Although I would hold that continuing to incarcerate the "actually innocent” is just as violative of the Eighth Amendment as executing them, see Osborne, 521 F.3d at 1130 (indicating that whether a distinction should be made between capital and non-capital cases remains an open question, although Herrera did suggest equal treatment), the district court will have, on remand, only the contrary views of our sister circuits.

. Even if, on remand, the district court were to hold that a stand-alone substantive actual innocence claim is cognizable in a non-capital habeas case, Souliotes would face the task of "affirmatively provfing] that he is probably innocent.” Carriger, 132 F.3d at 476-77 (deciding en banc that a stand-alone substantive actual innocence claim, if cognizable, requires an "extraordinarily high” showing, stronger than what is required to establish insufficiency of the evidence to convict and going beyond demonstrating doubt about guilt).

. Although Lee presented "new” evidence (evidence not presented at trial) in connection with his habeas petition, the evidence was not "newly discovered.” See Lee v. Lampert, 607 F.Supp.2d 1204, 1217 (D.Or.2009), rev’d, 610 F.3d 1125 (9th Cir.2010).

. The "new evidence” supporting a Schlup gateway claim need not be “newly discovered.” See Schlup, 513 U.S. at 316, 115 S.Ct. 851.

. Souliotes presents a compelling case for habeas relief. In his first trial, his trial counsel called fourteen witnesses, whose testimony undermined the prosecution’s case and resulted in a hung jury. In his second trial, the same trial counsel called only one witness, an individual who had testified for the prosecution during the first trial. This vastly reduced level of representation has not been explained as somehow strategic or the result of witness unavailability, which presumably could have been addressed under Federal Rule of Evidence 804. Thus, if allowed to pursue his ineffective assistance of counsel claim, Souliotes could likely show that his conviction was not the product of an error-free trial. In addition, Souliotes proffers new scientific evidence that is alleged to contradict the key piece of evidence linking him with the crime scene, thereby casting significant doubt on the accuracy of the verdict. Souliotes epitomizes the type of habeas petitioner the Schlup gateway was intended to benefit.